**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 16, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

B. WILLIS, C.P.A., INC., an
Oklahoma corporation,

       Plaintiff - Appellant,

v.

BNSF RAILWAY CORPORATION, a
foreign corporation; UNION PACIFIC
RAILROAD COMPANY, a foreign
corporation; PUBLIC SERVICE
COMPANY OF OKLAHOMA, an
Oklahoma corporation,

       Defendants - Appellees.

No. 06-5015

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 04-CV-163-TCK)**

---

William T. Dickson, Tulsa, Oklahoma, for Plaintiff-Appellant B. Willis, C.P.A.,
Inc.

Stratton Taylor, Taylor, Burrage, Foster, Mallett, Downs & Ramsey, Claremore,
Oklahoma (Hugh D. Rice and William P. Tunnell, Rainey, Ross, Rice & Binns,
Oklahoma City, Oklahoma; Mark H. Ramsey and Clinton D. Russell, Taylor,
Burrage, Foster, Mallett, Downs & Ramsey, Tulsa, Oklahoma; and Robert D.
Hart, Gibbs, Armstrong, Borochoff, Mullican & Hart, Tulsa, Oklahoma, with him
on the briefs), for Defendants-Appellees BNSF Railway Corporation, Union
Pacific Railroad Company and Public Service Company of Oklahoma.

Before **TACHA, EBEL** and **KANE,** [*] Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____


In 1992, Defendant-Appellee Public Service Company of Oklahoma ("PSO") used the eminent domain authority granted to it under Oklahoma law to condemn an easement across property owned by Plaintiff-Appellant B. Willis, C.P.A., Inc. ("Willis"). Willis, in turn, invoked remedies available under Oklahoma law, first to challenge, before a state court judge, the necessity for PSO to condemn this easement for a public use; and second to challenge, in a jury trial, the amount of compensation awarded Willis for the easement. Pursuant to Oklahoma law, PSO took possession of the easement while Willis' challenges to the condemnation proceedings were ongoing and, since 1995, has operated a rail line across Willis' property.

Willis commenced this federal litigation while those state proceedings remained pending, asserting federal and state law claims in this federal action that challenged aspects of the state condemnation case. The district court dismissed these claims, concluding that prior federal proceedings precluded one of Willis' claims and that Willis' other claims would not be ripe for adjudication as long as

_____

[*]Honorable John L. Kane, Jr., Senior District Judge of the District of Colorado, sitting by designation.

the state court condemnation action remained ongoing. While the district court's decision was before this court on appeal, however, the state courts finally resolved Willis' challenge to the necessity of PSO's condemning the easement, concluding that PSO had established a public necessity sufficient to warrant condemnation of the easement.

Because this decision conclusively resolved the material issues presented by most of Willis' claims asserted in this federal action, Oklahoma issue preclusion principles preclude Willis from pursuing all but portions of two of its claims. The two exceptions are 1) aspects of Willis' due process/equal protection claim, to the extent that Willis alleges PSO acted in concert with the state trial judge to deprive Willis of an initial hearing and discovery to challenge the public necessity of the easement; and 2) Willis' trespass claim, to the extent that claim alleges that PSO removed limestone and coal from below the surface of the easement.

We AFFIRM the district court's dismissal of all but these aspects of Willis' due process/equal protection and trespass claims, but we REMAND those precluded claims with directions that the district court dismiss them with prejudice. As to those portions of Willis' due process/equal protection and trespass claims that are not precluded, because the state proceedings challenging the amount of compensation awarded for the easement are still pending, those claims are not yet ripe for adjudication. We, therefore, AFFIRM the dismissal of

3

those claims, but REMAND them to the district court to clarify that their dismissal is without prejudice.

## I. BACKGROUND

**A.    Prior litigation between the parties**

Willis[1] owns property in Oolagah, Rogers County, Oklahoma.  PSO operates a power plant nearby.  Defendant Union Pacific owns a rail line that runs adjacent to this power plant.

To fuel its plant, PSO purchases coal from the Powder River Basin in Wyoming and contracts with Defendant BNSF Railway Corporation ("BNSF") to transport the coal to the Oolagah plant.  Because BNSF did not own or operate a rail line adjacent to the plant, however, it had to subcontract with Union Pacific to complete delivery.  PSO believed that it could obtain much better shipping terms if BNSF also had a rail line running to the power plant, because then the two railroads would have to compete for PSO's shipping business.  Therefore, PSO sought to build a rail line, approximately ten miles long, connecting the power plant to an already-existing BNSF line.  That new line ran through Willis' property.

When Willis refused to grant PSO an easement across its property to build and operate this rail line, PSO, in October 1992, began proceedings to condemn

---

[1]Willis is "a professional corporation whose sole stockholder is Buck Willis CPA."  Aplt. Br. at 1.  Throughout this opinion, we refer to the corporate entity, rather than the individual.

the easement under Oklahoma's eminent domain provisions. The Oklahoma

Constitution permits the condemnation of private property for a public use. See

Okla. Const. art. 2, § 24.[3] And Okla. Stat. tit. 27, § 7 expressly gives a power

company, such as PSO, "the right of eminent domain in the same manner and by

like proceedings as provided for railroad corporations" under Oklahoma law.[4]

---

[3]The Oklahoma Constitution, art. 2, § 24, provides, in pertinent part:

Private property shall not be taken or damaged for public use without just compensation. . . . Such compensation shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law. . . . The commissioners shall not be appointed by any judge or court without reasonable notice having been served upon all parties in interest. The commissioners shall be selected from the regular jury list of names prepared and made as the Legislature shall provide. Any party aggrieved shall have the right of appeal, without bond, and trial by jury in a court of record. Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested. When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of such compensation. The fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it is taken. In all cases of condemnation of private property for public or private use, the determination of the use shall be a judicial question.

[4]Oklahoma Statutes tit. 27, § 7 provides, in full:

Any person, firm or corporation organized under the laws of this state, or authorized to do business in this state, to furnish light, heat or power by electricity or gas, or any other person, association or firm engaged in furnishing lights, heat or power by electricity or gas shall have and exercise the right of eminent domain in the same manner and by like

(continued...)

5

Oklahoma law further sets forth specific procedures, see Okla. Stat. tit. 66, §§ 51-66, by which a railroad or power company can condemn private property for "a lawful public use." Pub. Serv. Co. of Okla. v. B. Willis, C.P.A., Inc., 941 P.2d 995, 999 (Okla. 1997) (citing Okla. Const. art. 2, §§ 23, 24).

Acting pursuant to these eminent domain procedures, PSO filed a petition in a Rogers County state court to condemn the easement across Willis' property. The state court then appointed a three-member commission, which determined "just compensation" PSO should pay Willis for the easement. Okla. Stat. tit. 66, § 53(A), (C);[5] see also City of Stigler v. Crumley, 99 P.3d 253, 254 (Okla. Civ.

---

[4](...continued)
proceedings as provided for railroad corporations by laws of this state.

[5]Oklahoma Statutes tit. 66, § 53 provides, in pertinent part:

A. If the owner of any real property or interest therein, over which any railroad corporation, incorporated under the laws of this state, may desire to locate its road, shall refuse to grant the right-of-way through and over his premises, the district judge of the county in which said real property may be situated shall, upon application or petition of either party, and after ten (10) days' notice to the opposite party, direct the sheriff of said county to summon three disinterested freeholders, to be selected by said judge as commissioners, and who shall not be interested in a like question.

. . . .

C. The commissioners shall be sworn to perform their duties impartially and justly; and they shall inspect said real property and consider the injury which said owner may sustain by reason of the condemnation and they shall assess the just compensation to which said owner is entitled; and they shall forthwith make report in writing to the

(continued...)

6

App. 2004). Willis objected, not only to the amount of compensation the three-member commission awarded, but to the validity of the condemnation itself, asserting that PSO was not taking the easement for a public use.[6] See Willis, 941 P.2d at 997.

Notwithstanding Willis' objection challenging the public need for PSO to

_____

[5](...continued)
clerk of the court, setting forth the quantity, boundaries, and just compensation for the property taken, and amount of injury done to the property, either directly or indirectly, which they assess to the owner; which report must be filed and recorded by the clerk. A certified copy of the report may be transmitted to the county clerk of the county where the land lies, to be by him filed and recorded, without further acknowledgment or proof, in the manner and with like force and effect as is provided for the recording of deeds. And if said corporation shall, at any time before it enters upon said real property for the purpose of constructing said road, pay to said clerk for the use of said owner the sum so assessed and reported to him as aforesaid, it shall thereby be authorized to construct and maintain its road over and across said premises.

[6]With this objection, Willis preserved its right to have a court determine whether or not the easement PSO sought was for a public use. See Bd. of County Comm'rs v. Casteel, 522 P.2d 608, 611 (Okla. 1974) (noting that only a timely filed objection to the commissioners' report will preserve a challenge to the necessity of the taking); see also Calhoun v. City of Durant, 970 P.2d 608, 610-11 (Okla. Civ. App. 1997). In addition, Willis requested a jury determination of the adequacy of the compensation the three-member commission awarded Willis for the easement, see Willis, 941 P.2d at 997, which was provided for by law, see Okla. Const. art. 2, § 24; Okla. Stat. tit. 66, § 55(A). See generally Casteel, 522 P.2d at 611 (noting that only a jury demand preserves a challenge to the amount of compensation awarded); Calhoun, 970 P.2d at 610-11 (noting that issue of damages in a condemnation action is a jury question, while determination of the character of the use served is a matter for the court); Williams v. State ex rel. Dep't of Transp., 998 P.2d 1245, 1252-53 (Okla. Civ. App. 2000) (noting that only a jury demand preserves a challenge to the amount of compensation awarded).

take an easement across Willis' property, the state trial court denied Willis discovery on this issue and, without conducting an evidentiary hearing, held "that [PSO's] simple allegation of necessity in the [condemnation] petition was sufficient to sustain PSO's case" for condemning the easement; that is, because PSO had statutory authority to condemn property under Okla. Stat. tit. 27, § 7, Willis had no right to contest PSO's taking the easement across Willis' property. Willis, 941 P.2d at 997-98. Willis appealed that determination. See id. at 998.

Despite Willis' pending appeal, Okla. Stat. tit. 66, § 56 permitted PSO to take possession of the easement by paying the court clerk, on Willis' behalf, the amount of compensation the appointed three-member commission had awarded Willis.[7] See Pub. Serv. Co. of Okla. v. B. Willis, C.P.A., Inc., 155 P.3d 845,

---

[7]Okla. Stat. tit. 66, § 56 provides, in pertinent part, that

[e]ither party aggrieved [in a condemnation proceeding in the state trial or district court] may appeal from the decision of the district court to the Supreme Court; but such review or appeal shall not delay the prosecution of the work on such railroad over the premises in question, if such corporation shall first have paid to the owner of said real property, or deposited with the said clerk for said owner, the amount so assessed by said commissioners or district court . . . .

See also Okla. Const. art. 2, § 24 ("When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of such compensation."). See generally Richardson v. State ex rel. Okla. Dep't of Transp., 818 P.2d 1257, 1258 (Okla. Civ. App. 1991) (noting "[t]he power of eminent domain is a special proceeding created as a necessary attribute of sovereignty to facilitate the emergency acquisition of private property for public

(continued...)

8

848-49 (Okla. Civ. App. 2006), cert. denied, 128 S. Ct. 66 (2007). PSO then built a railroad track and bridge across approximately 1,069 feet of Willis' property. After completing construction of the track, PSO entered into an "Industrial Track and Operating Agreement" with BNSF in March 1995. Under that agreement, BNSF maintains this rail line and runs coal trains across it to PSO's power plant.

Even though the rail line had already been built, Willis' state appeal continued. In March 1995, the Oklahoma Court of Civil Appeals held that the allegation of necessity PSO made in its condemnation petition was sufficient to state a prima facie case for PSO's taking the easement across Willis' property, but that the trial court had abused its discretion in denying Willis discovery to support its effort to rebut PSO's prima facie condemnation case. See Willis, 941 P.2d at 998. Not obtaining all the relief it sought, Willis appealed this decision to the Oklahoma Supreme Court.

While Willis pursued that appeal, it also returned to the state trial court to challenge PSO's and BNSF's continued use of the easement, asserting that PSO had no legal right yet to the easement across Willis' property. Willis, therefore, demanded that PSO and BNSF immediately abandon the easement and stop running coal trains across Willis' land. The state trial court rejected Willis'

[7](...continued)
use," and further noting that "[b]ecause of the urgent necessity underlying condemnation proceedings, statutes defining the procedure are subject to fairly short time constraints").

position and, instead, issued a temporary injunction enjoining Willis from interfering with PSO's and BNSF's continued use of the easement while the Oklahoma Supreme Court considered Willis' appeal.

In 1997, the Oklahoma Supreme Court decided Willis' appeal, vacating the decision of the Oklahoma Court of Civil Appeals and remanding the condemnation action to the state trial court for further proceedings. See id. at 997. In doing so, the Oklahoma Supreme Court disagreed with the Court of Civil Appeals and held instead that PSO's

> mere filing of a [condemnation] petition does not establish a prima facie case [for condemnation]. It is well-settled that the condemnor has the initial burden of proof on the issues in a condemnation proceeding and meets that burden to the extent of making a prima facie case of necessity by introduction into evidence of a resolution of necessity from the condemning authority [PSO], whereupon the burden of proof shifts to condemnee [Willis] to show that the taking is not necessary.

Id. at 999. The Oklahoma Supreme Court concluded that, in this case, because PSO had "never attempted to have its resolution [of necessity] admitted into evidence by the trial court," PSO had never met its "initial burden" in the condemnation proceeding. Id.

The Oklahoma Supreme Court further held that, on remand, once PSO meets its initial burden, Oklahoma

> law provides a landowner such as Willis with the right and opportunity to contest the condemnor's right to take his property. There is a right to a hearing on all aspects of the plaintiff's right to condemnation upon timely and proper exceptions to the report of commissioners which challenge the condemnor's right to take the intended particular

10

property. Before an entity having eminent domain authority can appropriate private land to its use, all the steps legally requisite must have been taken.

Id. at 999-1000. In light of Willis' right to a hearing, the Oklahoma Supreme Court determined that the state trial court had erred by denying Willis "an opportunity to challenge PSO's asserted but unproven right to take [Willis'] property as well as the right to conduct discovery" on that issue. Id. at 1000.

Following the Oklahoma Supreme Court's decision remanding the eminent domain proceeding to the state trial court, Willis again argued to the trial court that PSO's and BNSF's continued use of the easement during the ongoing eminent domain proceeding was no longer lawful because PSO had never met its initial burden of showing that its exercise of eminent domain in this case was lawful. Willis thus again demanded that PSO and BNSF immediately abandon the rail line running across Willis' property. Willis also requested that the trial court vacate the injunction the court had previously entered enjoining Willis from interfering with the operation of the coal trains across the easement during the state condemnation proceedings. The state trial court, however, again rejected Willis' argument and instead left the previously issued injunction "in place pending the outcome of a hearing on [Willis'] objections" to PSO's taking Willis' property. This meant that PSO and BNSF could continue to operate coal trains on the rail line crossing Willis' property while the state trial court further considered PSO's petition seeking condemnation of the easement.

11

Willis pursued an interlocutory appeal of that decision. But the Oklahoma Court of Appeals upheld the trial court's decision to leave the injunction in place, concluding that, although "[a]fter issuance of [the] mandate in the prior appeal [decided by the Oklahoma Supreme Court], the trial court was required to give [Willis] a[] meaningful[] evidentiary hearing on the issues of necessity and public use, . . . [i]t was not require[d] to undo all that had transpired before then." "The first appeal resolved only [Willis'] right to an evidentiary hearing, and the question whether PSO established a prima facie case of necessity by alleging necessity in its original petition." The Oklahoma Supreme Court denied Willis' petition for a writ of certiorari challenging that decision of the Oklahoma Court of Civil Appeals.

Despite the fact that the state condemnation proceedings remained ongoing, Willis instituted two actions in the federal district court for the Northern District of Oklahoma collaterally challenging those state court proceedings.[8] Underlying the claims Willis asserted in those federal actions was Willis' continued belief, already rejected by the state courts, that PSO and BNSF were not entitled to use the easement over Willis' property while the state condemnation action remained unsettled.

_____

[8]Willis initiated these federal actions after the first Oklahoma Court of Civil Appeals' decision, and while Willis' appeal from that decision was pending before the Oklahoma Supreme Court. But the federal courts did not finally resolve Willis' federal actions until after the Oklahoma Supreme Court remanded the eminent domain proceedings to the state trial court for further proceedings.

In the first of these federal actions,[9] Willis asserted claims under 42 U.S.C. § 1983, as well as an Oklahoma state law trespass claim, alleging Willis "was constitutionally entitled to a final judicial determination on condemnation before PSO could take possession of the easement over [Willis'] property." B. Willis, C.P.A., Inc. v. Pub. Serv. Co. of Okla., No. 97-5107, 1999 WL 335207, at *2 (10th Cir. May 27, 1999) (unpublished) (emphasis added), cert. denied, 528 U.S. 1003 (1999). The district court denied Willis relief. See id.

On appeal from that decision, this court rejected on the merits Willis' facial constitutional challenge to the Oklahoma condemnation scheme, upholding the aspect of that scheme that permitted the condemnor to take possession of the property sought to be condemned before the condemnation proceedings were finally resolved. See id. at *2-*3. This court also rejected Willis' claim that the state trial court's enjoining Willis from interfering with PSO's and BNSF's continued use of the easement violated Willis' First Amendment freedom of speech.[10] See id. at *4.

---

[9]This first federal action was actually the product of two separate lawsuits Willis filed in federal court, which the federal court consolidated into one action.

[10]In asserting this First Amendment claim, Willis was "primarily concerned with a contempt proceeding brought to enforce the injunction" precluding Willis from interfering with PSO's and BNSF's possession of the easement, after Willis sent a letter to BNSF informing the railroad that, in light of the Oklahoma Supreme Court's decision in that state condemnation action, Willis intended to restore its fence line around the disputed easement and post "No Trespassing" signs. Willis, 1999 WL 335207, at *4.

13

This court, however, dismissed without prejudice Willis' claims against BNSF for trespass and Willis' constitutional claims alleging the Oklahoma eminent domain proceedings denied Willis just compensation, due process, and equal protection of the law. See id. at *2, *4. We concluded those claims would not be ripe for adjudication until the state condemnation proceeding was concluded. Id. at *2.

In the second of these federal actions, Willis similarly asserted, among other claims, that the state trial judge and PSO had violated Willis' First Amendment right to free speech when the court, in 1997, held Willis in contempt for violating the injunction precluding Willis from interfering with PSO's use of the easement while the state condemnation proceedings remained ongoing. See B. Willis, C.P.A., Inc. v. Goodpaster, 183 F.3d 1231, 1233-34 (10th Cir.), cert. denied, 528 U.S. 1046 (1999). The contempt citation resulted when, after the Oklahoma Supreme Court remanded the condemnation proceedings to the state trial court, Willis' attorney wrote PSO and BNSF and demanded that they cease running trains across Willis' property until the second condemnation hearing was completed. See id. at 1233. This court affirmed the district court's decision rejecting Willis' First Amendment claim on the merits. See id. at 1233-35.

Having failed to obtain relief in these two federal actions, Willis next filed a petition with the federal Surface Transportation Board ("STB") in February 2001, seeking a declaration that the rail line PSO had already constructed across

14

Willis' property was subject to the STB's exclusive jurisdiction. See B. Willis, C.P.A., Inc., No. 34013, 2001 WL 211240, at *1 (S.T.B. Mar. 5, 2001) (unpublished). If it was, then it was Willis' contention that PSO had unlawfully constructed that line without first obtaining the required certificate of public convenience and necessity from the STB. See B. Willis, C.P.A., Inc., No. 34013, 2001 WL 1168090, at *1-*2 (S.T.B. Oct. 1, 2001) (unpublished). In that federal administrative proceeding, however, the STB determined that the rail line running across Willis' property was a private rail line, over which the STB did not have jurisdiction. See id. at *2-*3. The Circuit Court for the District of Columbia affirmed the STB's determination, see B. Willis, C.P.A., Inc. v. Surface Transp. Bd., 51 Fed. App'x 321 (D.C. Cir. Nov. 26, 2002) (per curiam) (unpublished), and the United States Supreme Court denied Willis' petition for a writ of certiorari, see 540 U.S. 811 (2003). During all of these federal proceedings, the state condemnation action remained ongoing.

## B. This litigation

The specific federal litigation underlying this appeal stems from two consolidated cases Willis commenced after failing to obtain any relief in his previous three federal actions. In the first such case underlying this appeal, Willis sued BNSF in Oklahoma state court in February 2004, asserting state law tort and contract claims. Willis based those claims on Willis' continued belief that BNSF was wrongfully possessing the easement across Willis' property, in

15

light of the Oklahoma Supreme Court's earlier decision to remand the state eminent domain action to the state trial court for discovery and a hearing.[11] BNSF removed this litigation to federal court pursuant to the federal court's diversity jurisdiction, 28 U.S.C. § 1332.

In August 2004, Willis commenced another action in federal court, this time asserting a claim under the Interstate Commerce Commission Termination Act ("ICCTA")[12] against BNSF, Union Pacific, and PSO, and claims under 42 U.S.C. § 1983, as well as state law tort and property claims, against PSO and BNSF, again claiming their continued use of the easement across Willis' property was wrongful.[13]  The district court consolidated these two actions.

---

[11]In this federal action, Willis specifically alleged that BNSF 1) was wrongfully possessing and using Willis' land; 2) had been unjustly enriched as a result; 3) should be bound, based upon quasi-contract principles, to a licensing agreement (which BNSF had wrongly rejected) by which Willis would have agreed to permit BNSF to continue to use the easement while the eminent domain proceedings continued; and 4) was liable to Willis for punitive damages because BNSF's possession of Willis' property was "done deliberately, wantonly, intentionally and maliciously with full knowledge that there was no easement or right of way across Willis' property."

[12]The ICCTA is "codified generally at Title 49."  Sompo Japan Ins. Co. of Am. v. Union Pac. R.R. Co., 456 F.3d 54, 58 (2d Cir. 2006).

[13]In this action, Willis alleged that 1) the ICCTA has preempted Oklahoma's eminent domain statutes, as those statutes have been applied to Willis; 2) the condemnation of Willis' property by PSO and BNSF deprived Willis of due process because it was not effected for a public purpose; 3) the condemnation by PSO and BNSF also deprived Willis of equal protection of the law; 4) PSO was trespassing, under Oklahoma law, by going beyond the surface easement it had in Willis' property when PSO removed coal and limestone from

(continued...)

16

In June 2005, the district court dismissed all of Willis' state law and 42 U.S.C. § 1983 claims, under Fed. R. Civ. P. 12(b)(1), concluding those claims would not be ripe for adjudication as long as the state condemnation proceeding remained pending. Later, in January 2006, the district court granted BNSF, PSO and Union Pacific summary judgment on the remaining ICCTA claim, concluding that the earlier federal proceedings before the STB precluded Willis from reasserting that claim in these proceedings. Willis now appeals both district court decisions.

## C. Determination, in the state condemnation proceeding, that PSO had established the existence of a public use warranting condemnation of the easement

The state condemnation proceeding has remained ongoing during all of this federal litigation. In October 2004, seven years after the Oklahoma Supreme Court remanded the condemnation case for further proceedings, the state trial court conducted a hearing, after which the court concluded that PSO had sufficiently established that its condemnation of Willis' property was for a public use or necessity. See Willis, 155 P.3d at 847. On September 19, 2006, the

---

[13](...continued) below the surface of Willis' property; 5) title to the easement should be quieted in Willis; 6) PSO and BNSF should be ejected from Willis' property; 7) PSO and BNSF are liable to Willis for treble damages under Oklahoma law because they trespassed and wrongfully possessed Willis' property "by means of a state eminent domain proceeding that was rife with fraud, bad faith and oppressive conduct"; and 8) PSO and BNSF are liable to Willis for punitive damages because they violated Willis' rights to due process and equal protection "deliberately, wantonly, intentionally and maliciously."

17

Oklahoma Court of Civil Appeals affirmed. See id. at 852. While the instant

appeal was pending before this court, the Oklahoma Supreme Court denied

Willis' petition for a writ of certiorari and the United States Supreme Court did

the same. See Willis v. Pub. Serv. Co. of Okla., 128 S. Ct. 66 (2007). Those

state proceedings finally determined not only that PSO had established a public

necessity justifying its condemnation of an easement across Willis' property, but

also that PSO's and BNSF's possession of the easement during the state

condemnation proceedings was lawful.[14] See Brink v. Bartlett, 294 P. 106, 107

(Okla. 1930) (noting judgment became final after United States Supreme Court

denied a petition for a writ of certiorari); cf. Walker v. Telex Corp., 583 P.2d 482,

484 (Okla. 1978) (noting court of appeals' decision became final after petitioner

withdrew petition for certiorari filed with Oklahoma Supreme Court).

## II.  APPELLATE JURISDICTION

As a threshold matter, Defendants have filed with this court a motion to

dismiss this appeal for lack of appellate jurisdiction.[15] We disagree. This court

[14]In January 2008, the state trial court held a jury trial on the issue of whether the three-member commission awarded Willis adequate compensation for the easement. In that proceeding, the jury awarded Willis less compensation than did the three-member commission. Willis has appealed that decision and so the compensation matter has not been finally resolved.

[15]Willis asserts that Defendants filed their motion to dismiss the appeal out of time. 10th Cir. R. 27.2(A)(3) requires a party, "[i]f possible," to file a motion to dismiss an appeal "within 15 days after the notice of appeal is filed." Defendants instead filed their motion to dismiss two months after Willis filed its

(continued...)

has jurisdiction to consider this appeal from the district court's final judgment entered in this case. See 28 U.S.C. § 1291.

Willis did file its notice of appeal prematurely. The district court dismissed most of Willis' claims on June 23, 2005, leaving only Willis' ICCTA preemption claim still pending against all three Defendants. BNSF and PSO, but not Union Pacific, moved for summary judgment on that remaining claim. On January 3, 2006, the district court granted those two defendants summary judgment.

On January 17, 2006, Willis filed its notice of appeal. But the district court had not yet entered a final, appealable order because Willis' ICCTA claim remained pending against Union Pacific. See Jackson v. Volvo Trucks N. Am., Inc., 462 F.3d 1234, 1238 (10th Cir. 2006) (noting that "a judgment . . . that does not dispose of all claims is not considered a final appealable decision under [28 U.S.C.] § 1291").

On January 27, 2006, Union Pacific requested summary judgment on that remaining claim. The district court granted the motion on January 31, 2006, and on that same day entered judgment "terminating this matter."

The district court's final decision, on January 31, 2006, ripened Willis'

---

[15](...continued)
notice of appeal. Nevertheless, "we may not ignore the jurisdictional issue raised in the motion [to dismiss]. This court has an independent obligation to determine its . . . jurisdiction." Perales-Cumpean v. Gonzales, 429 F.3d 977, 981 n.3 (10th Cir. 2005).

prematurely filed notice of appeal. "[A]n otherwise nonfinal decision becomes final and appealable if the district court adjudicates all remaining claims against all remaining parties before the appellate court acts to dismiss the appeal on the merits for lack of jurisdiction." Harbert v. Healthcare Servs. Group, Inc., 391 F.3d 1140, 1146 (10th Cir. 2004) (citing Lewis v. B.F. Goodrich Co., 850 F.2d 641, 645 (10th Cir. 1988) (en banc)); see also Jackson, 462 F.3d at 1238; Ashley Creek Phosphate Co. v. Chevron USA, Inc., 315 F.3d 1245, 1263 (10th Cir. 2003). This court, therefore, has jurisdiction to consider an appeal from the district court's January 3, 2006, order, which was the decision named in the prematurely filed notice of appeal. See Harbert, 391 F.3d at 1144-45, 1146. And, because the premature notice of appeal referred to both the January 3, 2006 decision, "as well as the prior orders of the Court that did not dispose of all of the claims brought by Plaintiff," this court also has jurisdiction to review the district court's earlier decision dismissing most of Willis' claims as unripe. Cf. Breeden v. ABF Freight Sys., Inc., 115 F.3d 749, 752 (10th Cir. 1997) (holding premature notice of appeal that, pursuant to Fed. R. App. P. 4(a)(4), ripened after trial court denied Fed. R. Civ. P. 59(e) motion, was sufficient to give court of appeals jurisdiction to consider "any orders specified in the original notice").

Willis' prematurely filed notice of appeal, however, was not sufficient to give this court jurisdiction to consider an appeal from the district court's final judgment, dated January 31, 2006. See Nolan v. U. S. Dep't of Justice, 973 F.2d

20

843, 846 (10th Cir. 1992).  To preserve that decision for appeal, Willis needed to file another notice of appeal.  See Ashley Creek Phosphate Co., 315 F.3d at 1263; EEOC v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1250 (10th Cir. 1999).  Willis failed to do so.  Nevertheless, this court can treat Willis' amended docketing statement, filed with this court on February 9, 2006, after the district court's final decision, as the "functional equivalent" of a second notice of appeal.  See Smith v. Barry, 502 U.S. 244, 245, 248-49 (1992) (treating a pro se litigant's appellate brief as the "functional equivalent" of a timely filed notice of appeal); see also Haney v. Addison, 175 F.3d 1217, 1219 (10th Cir. 1999) (treating a pro se litigant's amended docketing statement as a notice of appeal, although noting that "we strongly discourage this practice"); Grimsley v. MacKay, 93 F.3d 676, 678 (10th Cir. 1996) (permitting docketing statement filed in counselled case to correct notice of appeal's failure to name party appealing, as required by Fed. R. App. P. 3); cf. Berrey v. Asarco Inc., 439 F.3d 636, 641-42 (10th Cir. 2006) (deeming counselled litigant's "motion to certify district court's order" to be functional equivalent of timely filed notice of appeal).

This court can do so, however, only if Willis' amended docketing statement gives the proper notice required under Fed. R. App. P. 3: "Notices 'shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken.'" Smith, 502 U.S. at 248 (quoting Fed. R. Civ. P. 3(c)); see also Berrey, 439 F.3d at

21

642. Willis' amended docketing statement meets all three of these requirements. It specifically refers to the district court's January 31, 2006 decision; identifies Willis as the appealing party; and names this court as the court to which Willis is appealing.

Furthermore, Willis filed that document in a timely manner, within thirty days of the district court's January 31, 2006 decision. See Fed. R. App. P. 4(a)(1)(A); see also Berrey, 439 F.3d at 641. In light of that, Willis' amended docketing statement was sufficient to give this court jurisdiction to consider Willis' appeal from the district court's January 31, 2006 decision granting Union Pacific summary judgment on the ICCTA claim. This court, therefore, has jurisdiction under 28 U.S.C. § 1291 to consider on appeal all of the district court's decisions entered in this case.[16]

---

[16]Although the district court dismissed most of Willis' claims because they were not yet ripe for adjudication, the district court did not specify whether that dismissal was with or without prejudice. Presumably, the court dismissed the claims without prejudice in order to permit Willis to reassert those claims after the state condemnation proceedings concluded and the claims thereby ripened. See Graham v. Hartford Life & Accident Ins. Co., 501 F.3d 1153, 1154, 1161, 1163 (10th Cir. 2007) (directing district court to dismiss without prejudice claim for attorneys' fees that was not yet ripe for adjudication), cert. denied, 128 S. Ct. 1650 (2008).

This circuit has recognized that in some circumstances, a dismissal without prejudice will not be a final, appealable decision. See Moya v. Schollenbarger, 465 F.3d 444, 448 (10th Cir. 2006). However, the fact that the district court's "dismissal was without prejudice does not necessarily make it non-final under section 1291." Id. "Rather, in this circuit, whether an order of dismissal is appealable generally depends on whether the district court dismissed the

(continued...)

22

## III. DISCUSSION

Satisfied that this court has jurisdiction, we turn to the merits of Willis'

appeal. The district court dismissed most of Willis' claims because they were not

---

[16](...continued)
complaint or the action. A dismissal of the complaint is ordinarily a non-final, nonappealable order (since amendment would generally be available), while a dismissal of the entire action is ordinarily final." Id. at 448-49 (quotation omitted). In applying this rule, however, this court takes a practical approach and does not rely upon the precise language that the district court used in its dismissal order, but instead "look[s] to the substance and objective intent of the district court's order." Id. at 449. This court has recognized that where the district court dismisses because of a defect that "cannot be cured through an amendment to the complaint, that dismissal . . . is for practical purposes" a dismissal of the entire action and is therefore final and appealable. Id. at 450-51. If the district court's decision is ambiguous, this court also looks to "whether the district court's order evidences an intent to extinguish the plaintiff's cause of action and whether the plaintiff has been effectively excluded from federal court under the present circumstances. If so, then our appellate jurisdiction is proper." Id. at 450 (quotations, citations, alterations omitted); see also id. at 451.

That is the case here. The district court's decision clearly indicated that the district court ultimately intended "to extinguish" Willis' action, excluding Willis "from federal court under the present circumstances." Id. at 450 (quotation omitted). And Willis could not have saved its claims by merely amending its complaints. Presuming that the district court dismissed some of Willis' claims without prejudice, therefore, this court has jurisdiction under 28 U.S.C. § 1291 to consider this appeal from the district court's final judgment. See Signature Props. Int'l Ltd. P'ship v. City of Edmond, 310 F.3d 1258, 1260-61 & 1261 n.2 (10th Cir. 2002) (holding, in case where appellate jurisdiction was based upon 28 U.S.C. § 1291, "fact that most of plaintiff's claims were dismissed without prejudice does not create a jurisdictional impediment," citing cases); see also Bateman v. City of W. Bountiful, 89 F.3d 704, 705-06 (10th Cir. 1996) (reviewing district court's dismissal of claims without prejudice because they were not yet ripe for adjudication).

yet ripe for adjudication in light of the ongoing state condemnation proceeding.[17]

That state proceeding remains ongoing as to the issue of whether the compensation awarded Willis is adequate. But the state courts have now finally determined that PSO established a public use that necessitated its condemning the easement across Willis' property and that PSO's and BNSF's possession and use of the easement during the state condemnation proceeding was lawful. The state courts' decisions finally resolving these two issues preclude Willis from pursuing the claims it is asserting in this federal action, with two exceptions.[18] See Arizona v. California, 530 U.S. 392, 412 (2000) (noting court's raising res judicata sua sponte may be appropriate in special circumstances to avoid unnecessary judicial waste); United States v. Sioux Nation, 448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting) (noting court may dismiss, sua sponte, on basis of res judicata); Burrell v. Armijo, 456 F.3d 1159, 1176 (10th Cir. 2006) (McConnell, J., concurring in judgment) (noting court can raise preclusion on its own motion, citing cases), cert. denied, 127 S. Ct. 1132 (2007); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4405 (2d ed. 2002) (noting it is possible that a court may raise preclusion on its

---

[17]The district court addressed the merits of Willis' ICCTA claim, concluding earlier litigation precluded Willis from reasserting that claim in this action.

[18]At this court's request, the parties filed supplemental briefs addressing the preclusive effect the state court's final determination of these issues had on Willis' claims asserted in this federal case.

own motion; further noting that "[p]reclusion even can be raised by an appellate court for the first time on appeal"); see also Lowell Staats Mining Co. v. Philadelphia Elec. Co., 878 F.2d 1271, 1274 (10th Cir. 1989) (noting district court applied res judicata sua sponte). But see Jicarilla Apache Nation v. Rio Arriba County, 440 F.3d 1202, 1208 n.3 (10th Cir. 2006) (declining to raise res judicata sua sponte); cf. Okla. Dep't of Pub. Safety v. McCrady, 176 P.3d 1194, 1199 n.21 (Okla. 2007) (noting that, while "it is uncommon" for appellate court to apply preclusion principles, it "is not unheard of"). These two exceptions are 1) Willis' due process/equal protection claim, to the extent that claim is based upon a theory other than Willis rearguing that PSO unlawfully possessed and used the easement during the state condemnation proceeding, and 2) Willis' trespass claim alleging PSO removed limestone and coal from below the surface easement.

## A.    Relevant legal principles

In concluding that most of Willis' claims were not yet ripe for adjudication, the district court relied upon Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985), as well as this court's decision in Willis' earlier appeal, Willis, 1999 WL 335207. Williamson County held that a claim asserting an unconstitutional taking[19] or the deprivation of due process resulting

_____

[19]Such takings claims are grounded in the Fifth Amendment's prohibition against "'private property be[ing] taken for public use, without just compensation,'" which applies to the states through the Fourteenth Amendment. Williamson County, 473 U.S. at 175 n.1 (quoting U.S. Const. amend. V).

25

from a condemnation proceeding will not be ripe for adjudication until the state or

local condemnation proceedings are final.[20]  See

_____

[20]In Williamson County, a land developer sued the County's regional
planning commission, alleging that the commission's application of zoning laws
and regulations to the developer's property amounted to a temporary taking of
that property.  See 473 U.S. at 175, 185.  Without deciding whether such
allegations state a takings or a due process claim, the Supreme Court held that the
developer's claim was not ripe for adjudication until the developer obtained a
final decision regarding the application of the zoning ordinance and subdivision
regulations and utilized state procedures for obtaining compensation for any
taking.  See id. at 185-87, 193-94, 197, 199-200; see also Signature Props., 310
F.3d at 1264-66; SK Fin. SA v. La Plata County, Bd. of County Comm'rs, 126
F.3d 1272, 1276 (10th Cir. 1997); Bateman, 89 F.3d at 706, 708.

This court has applied Williamson County's reasoning to conclude that, in
addition to takings claims, related constitutional claims challenging the state
condemnation proceedings will also not be ripe for adjudication until the state or
local condemnation proceedings are finally concluded.  See Signature Props., 310
F.3d at 1265-68 (addressing substantive due process claim and holding "finality
requirements are the same for due process claims and for takings claims");
Bateman, 89 F.3d at 709 (holding Williamson County's ripeness requirement
"applies to due process and equal protection claims that rest upon the same facts
as a concomitant takings claim," citing cases); see also Willis, 1999 WL 335207,
at *2 (applying Williamson County and concluding that Willis' claims, which
included due process, equal protection and access-to-courts claims that "derive, in
one way or another, from the eminent domain proceeding prosecuted by PSO,"
were unripe for adjudication until the state eminent domain proceeding was
concluded).

This court has acknowledged the possibility that, "[u]nder certain
circumstances, due process rights may arise which are beyond the more
particularized claim asserted pursuant to the Just Compensation Clause."  J.B.
Ranch, Inc. v. Grand County, 958 F.2d 306, 309 (10th Cir. 1992) (citing
Landmark Land Co. of Okla., Inc. v. Buchanan, 874 F.2d 717, 723 (10th Cir.
1989), abrogated on other grounds by Fed. Lands Legal Consortium ex rel. Robart
Estate v. United States, 195 F.3d 1190, 1195-96 (10th Cir. 1999)); see also Rocky
Mountain Materials & Asphalt, Inc. v. Bd. of County Comm'rs, 972 F.2d 309,
310-11 (10th Cir. 1992).  Under such circumstances, the due process claim may

(continued...)

26

473 U.S. at 185-86, 194-95, 197, 199-200; see also San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 327 (2005). And "whether an unconstitutionally improper taking occurred cannot be determined until both the taking and compensation have been legally evaluated." Wilkinson v. Pitkin County Bd. of County Comm'rs, 142 F.3d 1319, 1323 (10th Cir. 1998) (per curiam) (emphasis added); see also San Remo Hotel, 545 U.S. at 327 (noting that Williamson County held that "'takings claims are not ripe until a State fails to provide adequate compensation for the taking,'" quoting Williamson County, 473 U.S. at 195); Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 733-34

---

[20](...continued)
be ripe for adjudication before the state condemnation proceedings are complete. See Rocky Mountain Materials, 195 F.3d at 1195-96; J.B. Ranch, 958 F.2d at 309. Nevertheless, this court has held that, "where the property interest in which a plaintiff asserts a right to procedural due process is coextensive with the asserted takings claim," Williamson County's ripeness principle still applies. See Rocky Mountain Materials, 972 F.2d at 311.

In this case, because all of Willis' federal and state claims stem from the Oklahoma eminent domain proceedings, Williamson County's ripeness rule applies, requiring Willis to conclude the state condemnation proceedings before those claims will be ripe for adjudication in federal court. Cf. J.B. Ranch, 958 F.2d at 309-10 (holding that "[t]he facts of this case fall squarely within Fifth Amendment [takings] analysis. We do not find anything in the record which dictates a due process analysis above and beyond our consideration of Plaintiff's Just Compensation Clause claim"); Miller v. Campbell County, 945 F.2d 348, 352 (10th Cir. 1991) (holding court is "reluctant in the context of a factual situation that falls squarely within [the Just Compensation Clause] to impose new and potentially inconsistent obligations upon the parties under the substantive or procedural components of the Due Process Clause. It is appropriate in this case to subsume the more generalized Fourteenth Amendment due process protections within the more particularized protections of the Just Compensation Clause").

27

(1997). In this case, because the state court has not yet finally resolved the question of just compensation for the easement, Willis' claims challenging that state condemnation proceeding are still not ripe for adjudication.

Even so, Williamson County will not preclude the application of relevant preclusion principles.[21] See Wilkinson, 142 F.3d at 1323-24 (holding complying with Williamson County's ripeness requirement will not negate application of preclusion principles). And here, because the state court has finally concluded both that PSO has established a public use warranting its condemnation of an easement across Willis' property and that PSO's and BNSF's use of that easement

---

[21]We can apply issue preclusion principles, even though Willis' claims are otherwise unripe for review. Cf. Wilkinson, 142 F.3d at 1320-21 & 1321 n.2, 1324 (applying res judicata to preclude federal claims stemming from County's denial of three land use applications for a real estate development, where developer had previously filed three state actions challenging those decisions, and two of those three state actions were finally resolved). "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Nat'l Park Hospitality Ass'n v. Dep't of the Interior, 538 U.S. 803, 808 (2003) (citing Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n.18 (1993)); see also Suitum, 520 U.S. at 733 n.7. Where, as here, Willis asserts a "genuine case or controversy," ripeness implicates only prudential concerns. See Suitum, 520 U.S. at 733 n.7. Those prudential concerns will not preclude us from applying preclusion principles in this appeal, where the state courts have now finally resolved the legal issues relevant to Willis' claims asserted in this federal action. See id. at 739-40 (concluding Williamson County's ripeness requirement did not preclude considering takings claim on its merits, where resolution of the relevant legal issue would not require any further action by the relevant local land use agency); see also San Remo Hotel, 545 U.S. at 349 (Rehnquist, C.J., concurring in judgment) (referring to Williamson's requirement that litigant asserting claim in federal court must first pursue compensation for that taking in state court "as merely a prudential requirement," citing Suitum).

28

during the state condemnation proceedings was lawful, those final determinations preclude Willis from pursuing all but two of the claims it asserts in this federal action.[22]

"Under 28 U.S.C. § 1738, the preclusive effect of a state judgment is governed by the rules of preclusion of that state."[23]  Valley View Angus Ranch,

---

[22]Courts applying Williamson have recognized the anomalous result that, once the state court proceeding is finally resolved, the litigant may not be able to challenge the result entered in that state proceeding in federal court because of preclusion principles.  See San Remo Hotel, 545 U.S. at 341-46 (rejecting argument that "federal courts simply should not apply ordinary preclusion rules to state-court judgments when a case is forced into state court by the ripeness rule of Williamson County"); see also Wilkinson, 142 F.3d at 1323-25 (concluding, pre-San Remo Hotel, that "the Williamson ripeness requirement is insufficient to preclude application of res judicata and collateral estoppel principles," citing cases).  The Supreme Court has rejected the argument "that plaintiffs have a right to vindicate their federal claims in a federal forum."  San Remo Hotel, 545 U.S. at 342.

> [T]o the contrary, . . . issues actually decided in valid state-court judgments may well deprive plaintiffs of the "right" to have their federal claims relitigated in federal court.  This is so even when the plaintiff would have preferred not to litigate in state court, but was required to do so by statute or prudential rules.  The relevant question in such cases is not whether the plaintiff has been afforded access to a federal forum; rather, the question is whether the state court actually decided an issue of fact or law that was necessary to its judgment.

Id. (citations omitted).

[23]28 U.S.C. § 1738 provides, in pertinent part:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed,

(continued...)

Inc. v. Duke Energy Field Servs., Inc., 497 F.3d 1096, 1100 (10th Cir. 2007)

(footnote omitted); see also Wilkinson, 142 F.3d at 1322. "As a general rule"

under Oklahoma law, "the doctrine of preclusion operates to enjoin successive

attempts to relitigate the same issue in different forums."[24] State ex rel. Dep't of

Transp. v. Little, 100 P.3d 707, 719 (Okla. 2004). Further, Oklahoma law

recognizes the "well established rule that where two actions involving the same

issues, between the same parties, are pending at the same time in different courts,

---

[23](...continued)
if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

  Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

[24]Under Oklahoma law,

[p]reclusion doctrine consists of two precepts. Claim preclusion, formerly known at common law as res judicata, teaches that a final judgment on the merits of an action precludes the parties from re-litigating not only the adjudicated claim, but also any theories or issues that were actually decided, or could have been decided, in that action. The other preclusion doctrine, formerly known at common law as collateral estoppel, is issue preclusion. Under this doctrine, once a court decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim. Issue preclusion prevents relitigation of facts and issues actually litigated and necessarily determined in an earlier proceeding between the same parties or their privies.

State ex rel. Dep't of Transp. v. Little, 100 P.3d 707, 719 n.47 (Okla. 2004) (citations omitted).

a final judgment in one will be res judicata, or a bar in the other." Hixson v. Cook, 379 P.2d 677, 684 (Okla. 1962). Oklahoma law specifically affords preclusive effect to condemnation proceedings. See Okla. City v. Cooper, 420 P.2d 508, 511-12 (Okla. 1966); see also Elliott v. City of Guthrie, 725 P.2d 861, 862-63 & 863 n.7 (Okla. 1986); Graham v. City of Duncan, 354 P.2d 458, 464 (Okla. 1960); Fischer v. Okla. City, 174 P.2d 244, 246-47 (Okla. 1946).

Although "[t]he issue (collateral estoppel) and claim (res judicata) preclusion doctrines are often used interchangeably because they are closely related and both promote the same general public policy concerns," Tibbetts v. Sight 'n Sound Appliance Ctrs., Inc., 77 P.3d 1042, 1060 n.31 (Okla. 2003) (Opala, C.J., dissenting in part), in this case issue preclusion is the most relevant preclusion doctrine. "In accordance with the doctrine of issue preclusion (previously known as collateral estoppel), once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim." McCrady, 176 P.3d at 1199 (footnote omitted). To invoke issue preclusion, "there need not be a prior adjudication on the merits (as is often the case with res judicata) but only a final determination of a material issue common to both cases."[25] Id. Further, the

---

[25]There is no question that the issues of whether PSO established a public need for the easement across Willis' property and whether PSO and BNSF were unlawfully possessing that easement, while the state condemnation proceedings remained pending, have now been finally determined in the state condemnation

(continued...)

31

doctrine of issue preclusion "may not be invoked if the party against whom the earlier decision is interposed did not have a full and fair opportunity to litigate the critical issue in the previous case." Id. (quotation omitted).

## B. Applying these legal principles to Willis' claims asserted in this federal action

### 1. Willis' state law claims alleging that PSO and BNSF wrongfully possessed and used the easement across Willis' property during the state condemnation proceeding

Willis asserts state law claims against both PSO and BNSF premised on Willis' belief that PSO and BNSF wrongfully possessed and used the easement across Willis' property during the state condemnation proceedings.[26] The state

---

[25](...continued)
action. "A final judgment is one in which no appeal has been perfected within the time allotted by law or one in which an appeal has been properly perfected and acted upon by the highest court whose review has been sought." Nealis v. Baird, 996 P.2d 438, 459 (Okla. 1999). While the entire eminent domain proceeding is not yet final, because the state courts are still considering the amount of compensation to which Willis is entitled for the easement, see Willis, 155 P.3d at 849 n.7 (noting "that Oklahoma's eminent domain procedures are not 'complete' until (1) the condemnor's right to take is finally resolved and (2) the amount of the condemnation award is determined"), that fact is of no moment because the claims that Willis asserts in this federal action do not implicate the adequacy of the compensation award. See 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4434 (2d ed. 2002) (noting "[r]ecent decisions have relaxed traditional views of the finality requirement by applying issue preclusion to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief," particularly when the issue has been resolved "by appeal prior to final judgment"); cf. Cities Serv. Co. v. Gulf Oil Corp., 980 P.2d 116, 127 (Okla. 1999) (applying federal preclusive principles).

[26]Willis specifically alleged the following: 1) "From March 16, 1995 until it
(continued...)

32

courts' final determination that PSO established a public use sufficient to warrant

its condemning an easement across Willis' property and the Oklahoma courts'

determination that PSO and BNSF did not wrongfully possess the easement

during the state condemnation proceedings now preclude these claims.

PSO, of course, is the same party that initiated the state condemnation

action. And BNSF is in privity with PSO. "Privity is usually defined as mutual

or successive relationships to the same rights of property." Sautbine v. Keller,

423 P.2d 447, 457 (Okla. 1966) (quotation omitted). However, "[t]here are no

---

[26](...continued)
abandoned possession of Willis' property, BNSF was in wrongful possession of Willis' property." 2) BNSF was unjustly enriched "[b]y virtue of [its] wrongful possession and use of Willis' property." 3) After the Oklahoma Supreme Court's decision remanding the state condemnation proceeding to the state trial court, see 941 P.2d at 995, "Willis made a written demand that BNSF cease its wrongful possession and use of Willis' property." BNSF rejected that demand and yet continued to run trains across Willis' property. Thus, "justice and equity require that a [quasi-]contractual obligation be imposed on BNSF to compensate Willis for the use of Willis' property at the rate Willis was prepared to negotiate with" BNSF. 4) BNSF was liable to Willis for punitive damages because BNSF's actions "in wrongfully possessing and using Willis' property were done deliberately, wantonly, intentionally and maliciously with full knowledge that there was no easement or right of way across Willis' property." 5) PSO, acting in concert with BNSF, trespassed on Willis' property by possessing and using the easement across Willis' property. 6) PSO and BNSF are liable to Willis for treble damages resulting from PSO's trespass onto Willis' property because PSO and BNSF were able to gain possession of the easement across Willis' property "by means of a state eminent domain proceeding rife with fraud, bad faith and oppressive conduct." 7) Because PSO's and BNSF's possession of the easement across Willis' property was "void," title to the easement should be quieted in Willis. 8) Because PSO's and BNSF's possession and use of the easement across Willis' property was wrongful, they should be ejected and possession restored to Willis.

hard and fast rules; the existence of privity depends upon the circumstances and requires a person so identified in interest with another that he represents the same legal right." Wilson v. City of Tulsa, 91 P.3d 673, 677 (Okla. Civ. App. 2004) (quotation omitted); see also Hildebrand v. Gray, 866 P.2d 447, 450-51 (Okla. Civ. App. 1993). In this case, BNSF's use of the easement running across Willis' property, and BNSF's right to use that easement, both stem from its contract with PSO. And PSO's right to access the easement across Willis' property stems from its ability to condemn and use that easement. Under these circumstances, then, BNSF and PSO are in privity. Cf. State ex rel. Trimble v. Kindrick, 852 P.2d 758, 760-61 (Okla. Civ. App. 1992) (concluding corporate entity which received the deed to a hospital sold to a second corporate entity stood in privity with the second corporate entity in actions challenging sale of hospital).

The Oklahoma Court of Civil Appeals determined, in the state condemnation proceeding, that PSO was entitled to take possession of the easement across Willis' property after PSO paid the amount of compensation the three-member commission awarded Willis, after the state trial court entered its initial decision in that case. See Willis, 155 P.3d at 848-50. In reaching this conclusion, the state appellate court specifically rejected Willis' contention that PSO was a trespasser at the time PSO built the railroad track across Willis' property and began operating trains across it. See id.

The state condemnation proceedings, therefore, resolved the issue at the

34

heart of all of the state law claims that Willis asserts in this federal action, save

one. As part of the trespass claim Willis asserted against PSO, Willis alleged

that, although "PSO sought only to condemn a surface easement and explicitly

disclaimed any interest in the subsurface minerals," PSO nevertheless "sever[ed]

and remove[d] coal and limestone from below the surface of the property." See

generally Kirby-Smith Mach., Inc. v. City of Okla. City, 19 P.3d 331, 333 (Okla.

Civ. App. 2000) (noting "[e]asements are limited to the particular purpose for

which they are created") (quotation omitted). The state eminent domain

proceedings, so far as we can tell, did not specifically address that issue.

The Oklahoma Court of Civil Appeals' decision is now final, after both the

Oklahoma Supreme Court and the United States Supreme Court denied Willis'

petition for a writ of certiorari, see Willis v. Pub. Serv. Co., 128 S. Ct. 66 (2007).

Lastly, Willis does not specifically assert, in its supplemental brief, that it

did not have a full and fair opportunity to litigate the issue of whether PSO, and

BNSF through its contractual relationship with PSO, wrongfully possessed and

used the easement across Willis' property during the state condemnation

proceedings. For these reasons, then, the state condemnation proceedings

preclude Willis from further pursuing his state law claims premised on allegations

that PSO and BNSF wrongfully possessed the easement across Willis' property.

The state condemnation proceedings do not, however, preclude Willis from

pursuing its trespass claim to the extent that it alleges that PSO wrongfully

35

removed limestone and coal from underneath PSO's surface easement across Willis' property.

### 2. Willis' ICCTA claim

Willis asserts a claim seeking a declaratory judgment, see 28 U.S.C. § 2201, that the ICCTA preempts Oklahoma's eminent domain statutes, as applied to PSO's condemnation of an easement across Willis' property, because in obtaining this easement, PSO is attempting to regulate interstate rail transportation. Willis asserted this claim against all three defendants, PSO, BNSF and Union Pacific. The final determinations made by the Oklahoma courts in the state condemnation proceeding preclude Willis from further pursuing this claim.

PSO is the same party that initiated the state condemnation proceeding. And, as discussed above, BNSF is in privity with PSO under the circumstances of this case. Union Pacific owned the already existing track adjacent to PSO's power plant but is not otherwise involved in PSO's condemnation action. Willis, nevertheless, named Union Pacific as an "interested party" to its declaratory judgment claim based upon the ICCTA. Willis apparently did so because the Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." (Emphasis added.) Willis believed that the Declaratory Judgment Act

36

required Willis to name all parties "interested" in its claim and further believed that Union Pacific was an interested party because PSO's new track across Willis' property had diverted business from Union Pacific. Under these circumstances, we will deem Union Pacific to be in privity with PSO for purposes of this claim.

In the state condemnation action, Willis argued that the state trial court "was without jurisdiction to enter its November 2004 Order because federal regulation of railroads preempts any assertion of State authority over the rail spur constructed by PSO." Willis, 155 P.3d at 850. The Oklahoma Court of Civil Appeals determined that Willis' earlier federal action before the STB precluded Willis from relitigating this issue. See id. In reaching this conclusion, the Oklahoma appellate court noted that the STB, in the earlier federal administrative proceedings, had determined that it did not have jurisdiction over PSO and its rail line running across Willis' property because PSO was not a rail carrier and because PSO's rail spur was a private track. See id. In light of that earlier administrative determination, the Oklahoma appellate court held that, "[a]bsent federal jurisdiction over PSO in its construction and operation of this rail spur, there is no basis for federal preemption of the proceedings in the [state] Trial Court." Id. at 851.

The state appellate court's determination is final. And Willis does not specifically assert, in its appellate brief, that it did not have a full and fair

opportunity to litigate this issue <u>before the Oklahoma appellate court</u>.[27]

Therefore, the state appellate court's determination precludes Willis' ICCTA

preemption claim asserted here.

### 3. Willis' state and federal law claims challenging the conduct of the state condemnation proceedings

Willis asserts several claims against PSO and BNSF challenging the general

manner in which the Oklahoma courts conducted the state condemnation

proceedings.

### a. Willis' due process/equal protection claim against BNSF

Willis alleged, under 42 U.S.C. § 1983, that BNSF deprived Willis of both

due process and equal protection because, no later than the Oklahoma Supreme

Court's decision in <u>Willis</u>, 941 P.2d 995, "BNSF was aware that its possession

and use of Willis' property was wrongful and in violation of Willis' constitutional

rights." In addition, Willis alleged that BNSF is liable for punitive damages

because BNSF violated Willis' due process and equal protection rights

"deliberately, wantonly, intentionally and maliciously."

As previously discussed, BNSF is in privity with PSO, and PSO was a party

to the state condemnation action. In that condemnation action, the Oklahoma

---

[27]Willis does assert, in its supplemental brief, that it did not have a full and fair opportunity to litigate this issue in the STB proceeding. That is an issue that Willis could have argued to the Oklahoma appellate court. But Willis does not assert that it lacked a full and fair opportunity to litigate the preclusive effect to be given those STB proceedings before the Oklahoma Court of Civil Appeals.

Court of Civil Appeals finally determined that PSO, and thus BNSF through its contractual relationship with PSO, was entitled to possess the easement after PSO paid the determined amount of compensation to the court clerk on Willis' behalf. See Willis, 155 P.3d at 848-50. Willis does not specifically assert, in its supplemental brief, that it did not have a full and fair opportunity to litigate this issue. Thus, the Oklahoma courts' determination precludes Willis' due process/equal protection claim against BNSF.

### b. Willis' due process/equal protection claim against PSO

Willis alleges, under 42 U.S.C. § 1983, that PSO, acting under color of state law, seized the easement across Willis' property in violation of Willis' federal due process and equal protection rights. Specifically, Willis asserted that PSO accomplished this seizure "by knowingly and deliberately prevailing on the state district court to [exercise] its jurisdiction corruptly and issue an order that contradicted what the state district court admitted it knew the law to be and permit PSO to seize Willis' property without giving Willis the process due in violation of Willis' rights under the Oklahoma Constitution." Further, Willis contends that PSO is liable for punitive damages because PSO violated Willis' due process and equal protection rights "deliberately, wantonly, intentionally and maliciously."

Willis' due process and equal protection claims are difficult to pin down.

In its opening brief, Willis asserted that "neither PSO nor BNSF had any right to be on or had any rights in Willis' property until" the state trial court's November 15, 2004, order, following the Oklahoma Supreme Court's remand. "Until that date, they were trespassing on the property as state actors under color of state law in violation of both Willis' state law property rights under the Oklahoma Constitution and Willis' federally protected rights to due process and equal protection of the law." To the extent that this is the basis for Willis' due process and equal protection claims, the state courts finally resolved those issues against Willis when the state court held that PSO and BNSF did <u>not</u> wrongfully possess and use the easement during the state condemnation proceedings.

In its supplemental brief, however, Willis also asserts that its due process and equal protection claims asserted against PSO are based instead upon the state trial court initially depriving Willis of discovery and a hearing, the reasons for which the Oklahoma Supreme Court remanded the state condemnation action to the state trial court. In addition, in what appears to be an effort to allege that PSO acted under color of state law, as is required for liability under § 1983, Willis further alleged that PSO acted in concert with the state trial judge to deprive Willis of due process and equal protection.[28] The state condemnation

---

[28]"In order to state a [42 U.S.C.] § 1983 claim, a plaintiff must 'allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" <u>Bruner v. Baker</u>, 506 F.3d 1021, 1025-26 (10th Cir. 2007)

(continued...)

proceedings, as far as we can tell, did not specifically address and resolve such a claim. To the extent that this is the basis for Willis' due process and equal protection claim, the already resolved state court matters do not preclude it. The same is true for Willis' claim for punitive damages stemming from these alleged constitutional violations. Nevertheless, because those claims stem from the ongoing state condemnation proceedings, they are not yet ripe for adjudication. We, therefore, affirm the district court's decision to dismiss these due process/equal protection claims without prejudice.

## IV. CONCLUSION

For the foregoing reasons, final determinations that Oklahoma courts have made in the state condemnation proceedings preclude Willis from pursuing all of the state and federal claims Willis asserts in this action, with only two limited exceptions. Final determinations made in the state proceedings do not preclude 1) Willis' state law trespass claim to the extent it alleges that PSO wrongfully removed coal and limestone from beneath the surface easement; and 2) Willis'

---

[28](...continued)
(quoting West v. Atkins, 487 U.S. 42, 48 (1988)). At different times, Willis appears to have asserted, in a contradictory manner, that PSO was acting under color of state law simply by exercising the eminent domain authority Oklahoma law gave PSO and, alternatively, that PSO was acting under color of state law instead by acting in concert with the state trial judge to deprive Willis of due process and equal protection of the law, relying upon Dennis v. Sparks, 449 U.S. 24, 27-29 (1980) (holding private parties might act under color of state law if they act in concert with state actor). We need not decide here whether PSO was, in fact, acting under color of state law.

41

due process/equal protection claim asserted against PSO, to the extent that claim is based upon allegations other than that PSO wrongfully possessed and used the easement across Willis' property during the state condemnation proceedings. These two viable claims are, nevertheless, not yet ripe for adjudication. We, therefore, AFFIRM the district court's decision to dismiss them and REMAND for the district court to dismiss these two claims without prejudice.

The rest of Willis' claims are precluded. We, therefore, AFFIRM the district court's decision to dismiss those claims, but REMAND for the district court to dismiss those claims with prejudice. See <u>MACTEC, Inc. v. Gorelick</u>, 427 F.3d 821, 827, 830-33 (10th Cir. 2005) (affirming dismissal of precluded claim with prejudice).