**RECEIVED**
Court of Appeals

SEP 1 6 2015

Lisa Matz
Clerk, 5th District

5th Court of Appeals
FILED: 9-21-15

Lisa Matz, Clerk

CAUSE NO. 05-14-01575-CV

IN THE COURT OF APPEALS

FIFTH DISTRICT OF TEXAS

AT DALLAS

---

WILLIAM T. DICKSON
Appellant

v.

BNSF RAILWAY COMPANY
And
FELLERS SNIDER BLANKENSHIP BAILEY & TIPPENS P.C.
Appellees

---

APPELLANT WILLIAM T. DICKSON'S REPLY BRIEF TO RESPONSE OF
BNSF RAILWAY COMPANY

Appeal from Grant of Summary Judgment by the 193rd District Court
Honorable Carl Ginsberg, Presiding

William T. Dickson,
Pro Se Plaintiff/Appellant
2626 Maple Avenue,
Suite 200
Dallas, Texas 75201
(214) 696-1100
(214) 740-0112
Wtdickson7@aol.com

# TABLE OF CONTENTS

I.      Fact in Dispute That Precludes Summary Judgment................................1

A.      Did the Claims Being Litigated in Appeal 10-5096 Settle On Or About
        August 31, 2010?.........................................................................................1

II.     BNSF's Statement of Facts................................................................2

A.      The Underlying Federal Litigation.....................................................2

B.      The Dismissal of Willis Claims by the Federal District Court.......................3

C.      The Tenth Circuit Decision With Respect to BNSF..................................4

D.      The Claims Willis Pursued Against BNSF On Remand and In
        Appeal 10-5096 Were Not Non-Existent..............................................5

E.      BNSF's Statement of Facts Is Riddled With False Statements.........................6

F.      Dickson Did Not Voluntarily Withdraw as Willis' Attorney...........................8

G.      The Hearing Held on February 17, 2011 Is Completely Irrelevant
        to This Case.................................................................................8

H.      Dickson Is Not Seeking a Contingency Fee From a Lawsuit Lost in 2006...........9

III.    The Trial Court Erred by Not Continuing the Summary Judgment Hearing................11

A.      Dickson Was Diligent in Pursuing Discovery..........................................11

B.      Dickson Showed That The Discovery Needed Was Material...........................12

IV.     The Trial Court Erred in Sustaining Fellers Snider's Objections
        to Dickson's Summary Judgment Evidence...........................................13

V.      The Court Should Reverse the Summary Judgment Granted to BNSF.............13

A.      Dickson's Claims Are Not Barred by Issue Preclusion...............................13

B.      Dickson's Claims Are Not Barred by Waiver.........................................15

C.      Dickson's Claims Are Not Barred By Quasi-Estoppel................................15

i

D.     The Court Should Reverse the Summary Judgment on Settlement
in Breach of 5 O.S. § 8...............................................................16

1.     The No Evidence Summary Judgment....................................16

2.     The Traditional Summary Judgment......................................17

a.     Willis CPA Did Not Lose Its Lawsuit....................................17

b.     This Claim Is Not Barred By Limitations................................18

E.     This The Court Should Reverse the Summary Judgment
For Tortious Interference With a Contract...............................19

1.     The No-Evidence Summary Judgment Was Error.....................19

2.     The traditional summary judgment was error...........................20

CONCLUSION AND PRAYER...........................................................22

# TABLE OF
# AUTHORITIES

Cases

*B Willis C.P.A., Inc. v. BNSF Railway Company,* 531 F.3d 1282
(10th Cir. 2008)..................................................3, 4, 5, 6, 9, 10, 14, 20, 21

*Public Service Company v. B. Willis, C.P.A., Inc.,* 941 P.2d 995 (Okla. 1997)............4

Statutes

5 O.S. § 8.............................................................................18, 19, 21

5 O.S. § 9....................................................................................16

CAUSE NO. 05-14-01575-CV

IN THE COURT OF APPEALS

FIFTH DISTRICT OF TEXAS AT DALLAS

---

WILLIAM T DICKSON
Appellant

v.

BNSF RAILWAY COMPANY
And
FELLERS SNIDER BLANKENSHIP BAILEY & TIPPENS P.C.
Appellees

APPELLANT WILLIAM T. DICKSON'S REPLY BRIEF TO
RESPONSE OF BNSF RAILWAY COMPANY

---

TO THE HONORABLE FIFTH COURT OF APPEALS:

Appellant, William T. Dickson ("Dickson"), files this brief in reply to the response brief filed by Appellee, BNSF Railway Company ("BNSF") and respectfully shows the Court the following:

## I.    Fact in Dispute That Precludes Summary Judgment.

Throughout its brief BNSF makes factual assertions that it claims are undisputed or established as a matter of law. In fact, there is one fact very much in dispute that make the summary judgment BNSF obtained reversible error.

### A.  Did the Claims Being Litigated in Appeal 10-5096 Settle On Or About August 31, 2010?

BNSF alleges that Dickson can show no damages because the alleged damages arose from the settlement between Willis and PSO/BNSF that occurred in February

1

2011. Specifically, BNSF asserts that Willis and PSO/BNSF announced their settlement on February 17, 2011.

In fact, PSO filed a motion in the U.S. District Court on December 28, 2010 that explicitly stated that no settlement had been reached but that if the Court were to hold a hearing the parties could reach a settlement. (CR 284) Then, at the hearing on February 17, 2011, Stratton Taylor stated (CR 290):

> Trans. Page 8, Line 17-Page 9, Line 2
> Mr. Taylor: That's fundamentally correct, Judge. I think what we'd really like to have happen today, *if possible,* would be if we could have the motion to approve settlement heard, because *if we could reach an agreement on that with B. Wilis, C.P.A.,* that would dispose of one matter .and then we could them go ahead and withdraw the motion for the settlement conference. If can't proceed with motion to approve the *settlement agreement that we would hope to get done today...*(Emphasis added.)

In fact, Dickson's damages arose from the tortious acts of BNSF and Public Service Company of Oklahoma ("PSO") in secretly settling Tenth Circuit Appeal 10-5096 with Willis' new counsel Fellers Snider Blankenship Bailey & Tippens P.C.. ("Fellers Snider") without Dickson's knowledge or consent. As shown by the e-mails ((CR 323-340, 343-375, 531-562, 562-597, 756-787, 789-822), Fellers Snider effected a settlement on behalf of Willis with PSO/BNSF on or about August 31, 2010.

Thus, there is very much a dispute as to when Willis and PSO/BNSF entered into a settlement agreement with respect to the claims being litigated in Tenth Circuit Appeal 10-5096.

## II. BNSF's Statement of Facts.

### A. The Underlying Federal Litigation

In its first alleged fact, BNSF states:

BNSF was a defendant in several of those actions, all of which grew out of the taking of part Willis CPA's property via eminent domain.

While Willis was engaged in litigation with PSO and BNSF over many years, the only previous litigation that is relevant to this case are two appeals to the U.S. Court of Appeals for the Tenth Circuit, *B. Willis C.P.A., Inc. v. BNSF Railway Company,* 531 F.3d 1282 (10th Cir. 2008) and Appeal No. 10-5096, *B. Willis C.P.A., Inc .v. BNSF Railway Company.* These cases did not grow out of PSO's taking Willis' property by eminent domain but by PSO seizing a portion of Willis' property without complying with Oklahoma's eminent domain requirements. See *Public Service Company v. B. Willis, C.P.A., Inc.,* 941 P.2d 995 (Okla. 1997).

In Appeal No. 10-5096, *B. Willis C.P.A., Inc .v. BNSF Railway Company,* Willis asserted a claim under 42 U.S.C. § 1983 that PSO had located a portion of its track off of the easement or right of way on a portion of Willis property PSO had never filed condemnation proceedings against. Specifically, Willis pleaded that PSO, as a state actor, located its track beneath the surface easement it had impressed on Willis' property. See CR 232 and CR 272. The Tenth Circuit held that Willis had a "viable claim" for removal of coal and limestone from "beneath the surface easement." *B. Willis C.P.A., Inc. v. BNSF Railway Company,* 531 F.3d 1282, 1306 (10th Cir. 2008) If the coal seam was "beneath the surface easement," obviously the track, located even further down, is also beneath or off of the surface easement.

This claim was completely independent of PSO's eminent domain proceeding.

**B.    The Dismissal of Willis Claims by the Federal District Court.**

BNSF asserts on page 2 of its brief that Willis alleged "the wrongful possession

3

and use of a surface easement across its property. Willis alleged first, that there was no easement across Willis' property[1] and secondly, even if there was an easement, it was only a surface easement, as the Tenth Circuit held in *B. Willis C.P.A., Inc. v. BNSF Railway Company*, 531 F.3d 1282 (10th Cir. 2008) at 1306 and when PSO cut beneath the surface easement, it was trespassing off the easement.

When the U.S. District Court dismissed Willis claims in 2006, it did so without prejudice as unripe. When the Tenth Circuit ruled on July 16, 2008, it found that during the pendency of the appeal, some of the claims had become ripe and some were still unripe. *B. Willis C.P.A., Inc. v. BNSF Railway Company*, 531 F.3d 1282, 1287, 1288 (10th Cir. 2008) (CR Supp. #1 1228).

## C. The Tenth Circuit Decision With Respect to BNSF.

BNSF asserts that the Tenth Circuit affirmed the dismissal of all of Willis claims against BNSF. What BNSF has overlooked since the Tenth Circuit rendered its decision in 2008 is that it held that Willis' claims under 42 U.S.C. § 1983 were still viable so long as they were based on a claim other than PSO did not have right to use the easement it filed to condemn during the course of the state condemnation proceeding. *B. Willis C.P.A., Inc. v. BNSF Railway Company*, 531 F.3d 1282, 1306 (10th Cir. 2008) In other words, Willis still had a viable claim that PSO given Willis a cause of action by seizing property against which it had never filed condemnation proceedings and located its track off of the easement or right of way. And further, the Tenth Circuit went to great lengths to be clear that BNSF was in privity with PSO

---

[1] See *Public Service Company v. B. Willis, C.P.A., Inc.*, 941 P.2d 995 (Okla. 1997).

because of the Industrial Track and Operating Agreement by which BNSF took possession and control of the track and ran trains over it. *B. Willis C.P.A., Inc. v. BNSF Railway Company,* 531 F.3d 1282, 1302 (10th Cir. 2008).

### D. The Claims Willis Pursued Against BNSF On Remand and In Appeal 10-5096 Were Not Non-Existent.

After the Tenth Circuit issued its decision on July 16, 2008 holding that Willis had viable but unripe claims, Willis dismissed the pending state appeal on just compensation for a surface easement on of September 9, 2008. The U.S. District Court held that Willis' remaining claims were then ripe. (1st Supp. CR 1247, 1248).

Willis' primary claim was the 42 U.S.C. § 1983 claim against PSO for locating its track other than where it had condemned a surface easement. However, what BNSF is ignoring, and wants this Court to ignore, is that when Willis' primary claim became ripe on September 9, 2008, a derivative tort claim against BNSF also became ripe at the same time. If Willis did not have a claim against PSO for locating a portion of its track off of the right of way, then Willis would have no claim against BNSF for operating and using that track as PSO's contractor. But, as the Tenth Circuit held that that BNSF was in privity with PSO pursuant to the Industrial Track and Operating Agreement, if Willis had such a claim against PSO, Willis had the same claim against BNSF for operating the track and running trains over it as PSO contractor.

However, since this claim did not become ripe until September 9, 2008, **after** the ruling of the Tenth Circuit in *B. Willis C.P.A., Inc. v. BNSF Railway Company,* 531 F.3d 1282 (10th Cir. 2008) on July 16, 2008, the claim could not have been rendered non-existent or defunct by that decision..

5

**E.    BNSF's Statement of Facts Is Riddled With False Statements.**

Beginning on page 5 under Section V, BNSF begins a narrative that is riddled with false statements. On page 6 BNSF asserts that what PSO really wanted was for it and Willis CPA to simply walk away . What PSO really wanted for Willis to drop the appeal against both BNSF and PSO since PSO was responsible for obtaining the right of way under the Industrial Track and Operating Agreement (CR 246)and the Tenth Circuit had held BNSF and PSO were in privity as a result of that agreement. *B.    Willis C.P.A., Inc. v. BNSF Railway Company,* 531 F.3d 1282, 1302 (10th Cir. 2008).

Then BNSF falsely states that "Dickson did not tell Willis about the letter, but Willis saw it on Dickson's fax machine." Dickson did not have a fax machine. The letter was faxed to Willis' fax machine as Dickson used Willis' office as his Tulsa office. Willis received the fax and then called Dickson and told him about it. (CR 1st Supp. 303)

Next, BNSF falsely states that Willis "promptly told Dickson that he wanted him to accept the proposal on behalf of Willis CPA." Willis did no such thing. Willis and Dickson had several discussions about how to proceed, but Willis initially made no decision on how to respond. (CR 834, 836- 837). Then, Willis called Dickson and informed him that he was not to respond to PSO's letter because Fellers Snider was going to contact PSO's attorney and accept its offer. When Dickson attempted to discuss the matter further, Willis abruptly hung up. (CR 187, 628, 834, 837)

Dickson filed his attorney lien while the case was being actively litigated at the U.S. Court of Appeals and Willis had made no decisions about dropping the case. (CR 300). At the time Dickson sent his letter to PSO's attorney reminding him of Dickson's attorney lien, Willis had given Dickson no instruction to accept PSO's offer. Dickson's

6

instructions were not to accept PSO's offer because Fellers Snider were going to. (CR 187, 628, 834, 837). In fact, Fellers Snider did exactly that. (CR 323-340, 343-375, 531-562, 562- 597, 756-787, 789-822)

On page 6 BNSF falsely asserts that "because Dickson had defied his instructions regarding settlement, Wills contacted Steve Adams, an attorney at Fellers Snider, to get a second opinion." Willis informed Dickson on August 26, 2010 that Adams was going to contact PSO's attorney to accept PSO's offer. CR 187, 628, 834, 837). As shown by e-mails (CR 323-340, 343-375, 531-562, 562- 597, 756-787, 789-822) Adams called PSO's attorney by Friday, August 28, 2010 to do exactly that. Subsequent to that, Willis began demanding that Dickson contact PSO's attorney and accept PSO's offer, even though Fellers Snider had already settled the case on Willis' behalf.

On page 8 BNSF asserts that, "Willis wanted to hire Adams, but Adams would not agree to represent Willis CPA because of Dickson's threat to sue Fellers Snider." In fact, Steve Adams, as a shareholder of Fellers Snider represented Willis in the federal litigation and settled the case on Willis' behalf. (CR Supp #3 21) (CR 323-340, 343-375, 531-562, 562- 597, 756-787, 789-822)

What BNSF completely ignores in its narrative, is that PSO, BNSF and Willis, represented by Fellers Snider had settled the case on or about August 31, 2010 (CR 323-340, 343-375, 531-562, 562- 597, 756-787, 789-822) but hid this settlement while they attempted to get Dickson to agree to or at least participate in the settlement so that he would lose his claims against all of them to get paid for years of work under a contingent fee contract.

7

### F. Dickson Did Not Voluntarily Withdraw as Willis' Attorney.

BNSF assert that Dickson voluntarily withdrew as Willis' attorney in the underlying federal litigation. In fact, Dickson was compelled to withdraw after Willis withdrew Dickson's authority to prosecute the case. After Tenth Circuit Appeal No. 10-5096 was docketed, the Court entered a briefing schedule. After Dickson filed Willis' brief in chief, Willis informed Dickson that he did not have authority to file the brief.[2] (CR Supp. # 1 444) Shortly there after, Dickson contacted Willis about having a mediation hearing under the auspices of the Tenth Circuit mediation office. Willis agreed to the concept and such mediation was arranged. When Dickson notified Willis of the mediation date, Willis denied ever having agreed, accused Dickson of acting without authority and refused to participate. (CR 408, 409, 635, 636, 835.) Since Willis had withdrawn Dickson's authority to prosecute the case in Willis' name, Dickson had no choice but to withdraw.

However, by the time Dickson withdrew, unknown to both Dickson and the Tenth Circuit, Willis, represented by Fellers Snider, had already settled the case. (CR 323-340, 343-375, 531-562, 562- 597, 756-787, 789-822).

### G. The Hearing Held on February 17, 2011 Is Completely Irrelevant to This Case.

Beginning on page 10 of its brief under Section VII, BNSF, has a narrative, replete of legal argument, about the "settlement hearing" held in the U.S. District Court on February 17, 2011. As BNSF acknowledges, this hearing was held after the Tenth Circuit dismissed appeal 10-5096 for failure to prosecute. This "settlement hearing" is

---

[2] In his sworn affidavit filed in case under appeal, Willis stated that he allowed Dickson to file the brief. (CR 1st Supp. 371)

completely irrelevant to the case at bar for two reasons.

The claims that Dickson was litigating as Willis' attorney in appeal 10-5096 that underlie this lawsuit, were settled by Willis, PSO and BNSF on or about August 31, 2010. (CR 323-340, 343-375, 531-562, 562- 597, 756-787, 789-822). Since this settlement was hidden from both Dickson and the Tenth Circuit[3], the Court, with Willis' acquiescence (CR Supp. #1 612, Paragraph 25, 764), dismissed the claims for failure to prosecute prior to the hearing in question. As a result, the claims Dickson had been litigating on behalf of Willis at the Tenth Circuit in Appeal 10-5096 could not have been settled at the hearing on February 17, 2011.

## H. Dickson Is Not Seeking a Contingency Fee From a Lawsuit Lost in 2006.

BNSF assert that Dickson is seeking a contingency fee when the federal district court dismissed all of Willis CPA's claims by January 2006. What BNSF is ignoring, and hopes this Court will ignore is that Willis' claims dismissed in January 2006 were dismissed without prejudice as unripe. Such an adjudication is not an adjudication on the merits. In *B. Willis C.P.A., Inc. v. BNSF Railway Company*, 531 F.3d 1282 (10th Cir. 2008) the Tenth Circuit held that decisions in the related state condemnation proceeding had rendered some of Willis' claims ripe during the pendency of the appeal while other claims were still unripe.[4] But since the claims Willis was litigating in Appeal

---

[3] It was also presumable hidden from the District Court as well. Dickson was sanctioned and ordered to pay PSO for its attorney fees incurred after PSO had secretly settled the case with Fellers Snider on behalf of Willis. The fees Dickson was ordered to pay included fees for PSO's attorneys dealing with Fellers Snider to secretly settle the case. (CR Supp. #3 16-18) Not until the e-mails were produced (CR 323-340, 343-375, 531-562, 562- 597, 756-787, 789-822) was Dickson aware of the fraud that PSO had perpetrated on both Dickson and the U.S. District Court.

[4] BNSF incorrectly states that the Tenth Circuit "affirmed the dismissal" of Willis'

9

10-5096 were not ripe when *B. Willis C.P.A., Inc. v. BNSF Railway Company*, 531 F.3d 1282 (10th Cir. 2008) was filed with the Tenth Circuit, the claims could not have been lost or rendered defunct by the U.S. District Court in January 2006.

Moreover, the ruling of the Tenth Circuit in no way decided the claims against BNSF that Willis was litigating in Appeal 10-5096. The Tenth Circuit ruled that Willis' claims based on asserting that a portion of the track that PSO constructed across Willis' property was located off of the right of way PSO had condemned by eminent domain were not ripe at the time of its decision on July 16, 2008. *B. Willis C.P.A., Inc. v. BNSF Railway Company*, 531 F.3d 1282, 1306 (10th Cir. 2008). Subsequently, the U.S. District Court held that Willis' remaining claims were now ripe as of September 9, 2008. (CR Supp. #1 229, 232, 233) When Willis' primary claim became ripe on September 9, 2008, a derivative tort claim against BNSF also became ripe at the same time. If Willis did not have a claim against PSO for locating a portion of its track off of the right of way, then Willis would have no claim against BNSF for operating and using that track as PSO's contractor. But, as the Tenth Circuit held that that BNSF was in privity with PSO pursuant to the Industrial Track and Operating Agreement, if Willis had such a claim against PSO, Willis had the same claim against BNSF for operating the track and running trains over it as PSO's contractor.

However, since this claim did not become ripe until September 9, 2008, **after** the ruling of the Tenth Circuit in *B. Willis C.P.A., Inc. v. BNSF Railway Company*, 531

---

claims. The dismissal by the district court had been without prejudice as unripe. The Tenth Circuit, finding that decisions in the state proceedings had rendered some claims ripe while the appeal was pending, then proceeded to adjudicate those claims on the merits. It remanded the claims Willis would later litigate in Appeal 10-5096 to be dismissed without prejudice as unripe.

F.3d 1282 (10th Cir. 2008) on July 16, 2008, the claim could not have been rendered non-existent or defunct by that decision..

### III. The Trial Court Erred by Not Continuing the Summary Judgment Hearing.

#### A. Dickson Was Diligent in Pursuing Discovery.

Dickson served Fellers Snider with discovery requests, including request for production of e-mails (CR 31, 37) that were not produced until May, 2 014. (CR 323-340, 343-375, 531-562, 562- 597, 756-787, 789-822).

In Fellers Snider's response in 2012, it asserted that it had no responsive documents. (CR Supp. #1 325). There was no reason for Dickson to file a motion to compel the production of documents that Fellers Snider had already denied existed.

BNSF falsely asserts on page 19 of its brief that Dickson confronted Fellers Snider on the relevancy objection.[5] In fact, Dickson confronted Fellers Snider's attorney with copies of the e-mails obtained from PSO by a third party subpoena after PSO obtained a summary judgment and was severed out of the case. Confronted with the existence of e-mails between Fellers Snider and PSO's attorneys, Fellers Snider then produced certain e-mails from its files.

Dickson then moved to obtain an un-redacted copy of a critical e-mail PSO had produced. Once PSO refused to voluntarily produce it, Dickson filed a motion to compel on August 28, 2014 that was set for hearing on September 19, 2014, which was

---

[5] BNSF's brief on page 19 is cleverly drafted to confuse the Court between Fellers Snider's claim of relevancy and PSO's claim of privilege. It states that Fellers Snider produced "the e-mail." But Fellers Snider did not have "the e-mail." "The e-mail" was from PSO's out side counsel to its in-house counsel. (CR 339). PSO had asserted an attorney client privilege. If Fellers Snider had an un-redacted copy of the e-mail there could have been no privilege because Fellers Snider did not represent PSO. Fellers Snider represented Willis. (CR 323-340, 343-375, 531-562, 562- 597, 756-787, 789-822).

11

after the hearing on the motions for summary judgment filed by BNSF and Fellers Snider. (CR Supp. #3 60)Due to the materiality of an un-redacted copy of that e-mail, it was error for the trial court not to have granted a continuance.

## B.     Dickson Showed That The Discovery Needed Was Material.

There is clear evidence that shows that Willis/Fellers Snider and PSO/BNSF settled Tenth Circuit Appeal No. 10-5096 on or about August 31, 2010 and then acted hide it by representing that no settlement had been entered into until after Willis allowed the appeal to be dismissed for failure to prosecute, thereby extinguishing Dickson's attorney lien. As a result of BNSF's actions in settling the case, Dickson was unable earn a contingent fee. Under Oklahoma law, parties who settle around a contingent fee attorney are liable under 5 O.S. § 8 and for tortious interference with a contract.

An un-redacted copy of the e-mail (CR 339) PSO's attorney sent to five in-house attorneys at American Electric Power Co., Inc. after getting off the phone with Adams/Fellers Snider and a few days before notifying Adams/Fellers Snider that he had a draft agreement ready to review, was clearly material to showing that PSO/BNSF settled Appeal No. 10- 5096 while Dickson's attorney lien was in place and well before the Willis allowed the appeal to be dismissed for failure to prosecute. (1st Supp. CR 612, paragraph 25, 764).

Moreover. BNSF's argument that Dickson could not have earned a contingency fee because Willis claims were dismissed by the U.S. District Court in 2006 and the Tenth Circuit affirmed the dismissal in July 2008 is completely bogus. As described above, the claims against BNSF Dickson was litigating at the Tenth Circuit on behalf of

Willis in Appeal No. 10-5096 did not become ripe until September 9, 2008, after the decisions BNSF is attempting to rely on.

## IV. The Trial Court Erred in Sustaining Fellers Snider's Objections to Dickson's Summary Judgment Evidence.

Whether the trial court erred in sustaining Fellers Snider's objections to Dickson's summary judgment evidence is completely irrelevant to Dickson's claims against BNSF for two reasons. First, Dickson's response to BNSF's Motions for Summary Judgment contained essentially the same summary judgment evidence (CR 182-375) and it was not excluded against BNSF. Thus, it is the record against BNSF.

Second, after Fellers Snider filed its objection to Dickson's affidavit, Dickson filed a supplemental affidavit (CR 831) that neither Fellers Snider's motion nor the trial court's order addressed. As a result it is still in the record and supports Dickson case that summary judgment was improper.

## V. The Court Should Reverse the Summary Judgment Granted to BNSF.

### A. Dickson's Claims Are Not Barred by Issue Preclusion.

BNSF asserts that Dickson's claims were litigated in the "first action" and that outcome precluded Dickson from earning a contingent fee. First, Dickson is not suing for a contingent fee but for tort damages based on BNSF's tortious conduct. Moreover, the first action was Appeal 10-5096. The facts sought to be litigated in the "second action," the case at bar, were not fully and fairly litigated in the first action because the case was secretly settled and then, after Dickson was compelled to withdraw (CR 188, 189, 835-836), Willis allowed the appeal to be dismissed for failure to prosecute. (1st Supp. CR 612, Paragraph 25, 764). As a result, at the time of the dismissal Dickson was no longer in privity with Willis and Willis' counsel was Fellers Snider. (CR 323-340,

343-375, 531-562, 562- 597, 756-787, 789-822)

The action BNSF is trying pass off as the "first action" is, in fact, irrelevant, as the claims Willis was litigating in Appeal 10-5096 did not exist as justicible claims ("ripe") until after the case BNSF is relying on had concluded. As a result, those claims could not have been adjudicated in what BNSF misconstrues as the "first action".

BNSF cites irrelevant cases from irrelevant jurisdictions to claim the ruling of the U.S. District Court under appeal when PSO/BNSF secretly settled Willis' claims against them is preclusive. The controlling law on this matter is *B. Willis C.P.A., Inc. v. BNSF Railway Company*, 531 F.3d 1282 (10th Cir. 2008) at N. 24. "A final judgment is one in which no appeal has been perfected within the time allotted by law or one in which an appeal has been properly perfected and acted upon by the highest court whose review has been sought." Because Willis timely appealed the District Court's ruling, it was not a final judgment for purposes of preclusion. Moreover, it was not preclusive with respect to Dickson after Willis allowed Appeal 10-5096 to be dismissed for failure to prosecute as Dickson was no longer in privity with Willis.

BNSF makes the argument that the 2006 decision by the U.S. District Court was final. However, that decision was a dismissal of Willis' claims without prejudice as unripe. As noted above, in *B. Willis C.P.A., Inc. v. BNSF Railway Company*, 531 F.3d 1282 (10th Cir. 2008) the Tenth Circuit held that some of those claims became ripe during while the appeal was pending and adjudicated those claims on the merits. But the claims at issue in Appeal 10-5096 did not become ripe and justicible until after the decisions BNSF is relying on. As a result, the claim at issue could not have been rendered "defunct" by the decisions BNSF is relying on.

14

**B. Dickson's Claims Are Not Barred by Waiver.**

BNSF asserts that Dickson cannot recover because he waived his right to a fee by voluntarily withdrawing as Willis' attorney. As previously stated, Dickson is not seeking to collect a fee but tort damages for BNSF's tortious conduct. However, as previous explained, Dickson did not voluntarily withdraw. (CR 188, 189, 835-836). He was compelled to withdraw after Willis withdrew his authority to prosecute the case. To the extent that whether Dickson voluntarily withdrew is material, there is a clear factual dispute the made summary judgment improper.

However, the tortious conduct that Dickson complains of is the secret settlement around Dickson by PSO/BNSF with Willis' other counsel, Fellers Snider. This occurred on or about August 31, 2015 (CR 323-340, 343-375, 531-562, 562- 597, 756-787, 789-822), several months before Dickson filed his motions to withdraw. As a result, BNSF's waiver argument has no merit.

**C. Dickson's Claims Are Not Barred By Quasi-Estoppel.**

BNSF asserts that the Court should affirm the summary judgment because Dickson's claims are barred by quasi-estoppel. To support this claim BNSF asserts Dickson voluntarily withdrew as Willis' attorney and intentionally relinquished his right to a contingency fee but now claims he is somehow still entitled to a contingency fee.

As previously stated, Dickson is not seeking to collect a fee but tort damages for BNSF's tortious conduct. However, as previous explained, Dickson did not voluntarily withdraw. (CR 188, 189, 835-836). He was compelled to withdraw after Willis withdrew his authority to prosecute the case. Moreover, Willis did not lose that case. He secretly

settled it with PSO/BNSF while the case was being actively litigated in Appeal 10-5096 by Dickson as Willis' attorney.

### D. The Court Should Reverse the Summary Judgment on Settlement in Breach of 5 O.S. § 8.

#### 1. The No Evidence Summary Judgment.

BNSF begins by asserting that all of Willis' claims against BNSF were adjudicated in BNSF's favor by the federal courts in 2006 and 2008. Once again, the claims Dickson was litigating on behalf of Willis in Appeal 10-5096 in 2010 when that appeal was secretly settled by PSO/BNSF were not even ripe and justicible until after the decisions BNSF is relying on. Dickson suffered damages in not being able to prosecute the appeal to a successful conclusion and earn a contingency fee.

BNSF completely misrepresent 5 O.S. § 9 on pages 48-50 of its response brief. It asserts that the settlement by Fellers Snider with PSO/BNSF fell under the third scenario covered by 5 O.S. § 9, "when there is a contingent fee *with the amount specified for which the action is to be filed.*" Dickson's contingent fee contract (CR Supp. #1 361) did not specify the amount for which the action was to be filed and the third scenario does not apply. It is the second scenario that applies. Because Dickson had a contingent fee contract for a percentage of the recovery, the dollar amount of the fee is unknown and therefore, not fixed by contract. That is why the fee is called "contingent." As a result, under Oklahoma law contingent fee attorneys suing on a lien claim are entitled to try the case to establish or "fix" the dollar amount that they would have recovered had not the case been settled around them. *In Re Western Real Estate Fund, Inc.*, 922 F.2d 592 (10th Circuit 1990).

Contrary to the assertion of BNSF, Dickson was not able to complete his

contract with respect to Tenth Circuit Appeal 10-5096 and Willis did not lose that appeal. It was secretly settled on or about August 31, 2010. (CR 323-340, 343-375, 531-562, 562- 597, 756-787, 789-822). At a minimum, there was sufficient evidence to preclude a summary judgment.

BNSF asserts on pages 51-52 of its brief that there is no authority that anything about PSO and BNSF's business relationship ever made PSO or its attorneys the agent of BNSF. In *Mayor v. Wilkerson*, 111 P.2d 1069 the Oklahoma Supreme Court held that even when a case was dismissed prior to any recovery by a contingent fee attorney, a defendant was liable to the attorney if others acting on behalf of the defendant procured the dismissal of the action. Under the terms of the Industrial Track and Operating Agreement between PSO and BNSF, PSO was responsible for obtaining the right of way for the track. (CR 246-252). The Tenth Circuit held that PSO and BNSF were in privity because of that agreement. *B. Willis C.P.A., Inc. v. BNSF Railway Company*, 531 F.3d 1282, 1302 (10th Cir. 2008). In refusing to comply with a discovery request in the underlying federal litigation, BNSF pleaded that it had joint defense agreements with PSO (CR 266). At a minimum, there was sufficient evidence to preclude a summary judgment.

BNSF on pages 52 and 53 quotes from a report and recommendation in the U.S. District after the case was remanded in July 2008. What BNSF is ignoring is that this is what was on appeal in Tenth Circuit Appeal 10-5096 when PSO/BNSF secretly settled the case.

2.      **The Traditional Summary Judgment.**

a.      **Willis CPA Did Not Lose Its Lawsuit.**

17

BNSF first argues that Willis lost its lawsuit and then made a settlement after judgment. This assertion is absurd. The settlement at issue was made on or about August 31, 2010 while Tenth Circuit Appeal 10-5096 was pending. (CR 323-340, 343-375, 531-562, 562- 597, 756-787, 789-822). Willis had not lost Appeal 10-5096 and Dickson's contractual fee was not zero. It was at yet undetermined as the case was being actively litigated at the Tenth Circuit when PSO/BNSF and Fellers Snider on behalf of Willis secretly settled the case. That settlement triggered liability under 5 O.S. § 8.

**b.    This Claim Is Not Barred By Limitations.**

BNSF asserts that this claim is barred by limitations, citing 5 O.S. § 8 that provides in part that '[a]n attorney may enforce any lien provided for by this act in any court of competent jurisdiction by action filed within one (1) year after the attorney becomes aware of such compromise or payment of such judgment, or judgment may be rendered on motion in the case in the court in which the suit was brought." BNSF response brief at page 56. BNSF then asserts that Willis, PSO, and BNSF settled at the hearing on February 17, 2011. However, the claims that Dickson was litigating on behalf of Willis in Tenth Circuit Appeal 10-5096 and to which Dickson's lien attached were secretly settled on or about August 2010. (CR 323-340, 343-375, 531-562, 562-597, 756-787, 789-822). Dickson was completely unaware of this settlement until the e-mails were produced in May 2014 and therefore the limitations period did not start running until that date.

Subsequent to the secret settlement, Willis allowed Appeal 10-5096 to be dismissed for failure to prosecute. (CR Supp. #1 612, paragraph 25, 764). Had the case

18

not have been previously secretly settled, this would have extinguished Dickson's attorney lien. The settlement entered into at the hearing on February 17, 2011 did not did not trigger the limitations period under 5 O.S. § 8 because that settlement did not cover the claims litigated in Appeal 10-5096 as Willis had allowed those claims to be dismissed for failure to prosecute pursuant to the secret settlement agreement.

### E. The Court Should Reverse the Summary Judgment For Tortious Interference With a Contract.

#### 1. The No-Evidence Summary Judgment Was Error.

On page 57 and 58 of its brief BNSF asserts authority that blanket citation to voluminous records is not a proper response to a no evidence motion for summary judgment and that merely citing generally to voluminous summary judgment evidence in response to either a no-evidence summary judgment or traditional motion for summary judgment is not sufficient to raise an issue of act to defeat summary judgment. What BNSF is ignoring is on pages 18, 19, 20, 23 of Dickson's Response to BNSF Motions for Summary Judgment (CR 163-165, 168), Dickson quoted and discussed the evidence in detail and cited to this discussion by reference else where in his brief. Dickson did not make blanket citation to voluminous records. He discussed and quoted the evidence in detail and then rather than repeat the same discussion of the evidence over and over, incorporated the same discussion of the evidence by reference to else where in his pleading.

On page 58 BNSF continues to attempt to obscure the real issues. Dickson has never claimed that Oklahoma statutes forbid BNSF from prevailing against Willis CPA. Oklahoma does have a statute that makes BNSF liable for secretly settling around an attorney with a perfected attorney lien a case being actively litigated. That same statue

makes BNSF liable for the contingency fee that attorney would have earned had BNSF not settled the case around the attorney and prevented him from recovering for his client. Furthermore, the case, Tenth Circuit Appeal 10-5096 did not settle after BNSF prevailed. Willis (and therefore Dickson) received no money because BSNF and Willis settled before the case, Tenth Circuit Appeal 10-5096, was decided by the Tenth Circuit.

Finally, BNSF asserts once again, that "long before any settlement …the federal courts already had adjudicated Willis CPA's claims against it." This assertion completely ignores the fact that, under the holding of the Tenth Circuit in *B. Willis C.P.A., Inc. v. BNSF Railway Company*, 531 F.3d 1282, 1306 (10th Cir. 2008), the claims Willis CPA was litigating against BNSF in Tenth Circuit Appeal 10-5096 were not even ripe or justiciable when the federal court rulings BNSF is attempting to rely on were issued.

### 2. The traditional summary judgment was error.

On page 59 of its brief BNSF again claims that the federal district court granted judgment to BNSF in 2006. With respect to the claims being litigated in Tenth Circuit Appeal 10-5096, the federal district court dismissed them without prejudice as unripe. In 2008 the Tenth Circuit held that these claims were not ripe or justicable. *B. Willis C.P.A., Inc. v. BNSF Railway Company*, 531 F.3d 1282, 1306 (10th Cir. 2008). Dickson could collect a fee under the contingency fee contract for the claims being litigated in Tenth Circuit Appeal 10-5096 because PSO/BNSF secretly settled the case on or about August 31, 2010. BNSF then complete misrepresents Dickson's argument in his brief in chief. BNSF quotes Dickson's brief as saying:

20

"[t]he fact that the trial court dismissed Willis's claims [*before the first appeal to the Tenth Circuit*] is completely irrelevant, as Willis immediately appealed that ruling which transferred all jurisdiction to the appellate court This also meant that the ruling of the trial court was not a final order that would be preclusive between the parties." (Emphasis added.)

The insertion "before the first appeal to the Tenth Circuit" is a complete fabrication by BNSF. What Dickson asserted was that the fact the trial court dismissed Willis' claims in July 2010 was completely irrelevant because Willis immediately filed Appeal 10-5096. Under the holding of the Tenth Circuit in *B. Willis C.P.A., Inc. v. BNSF Railway Company*, 531 F.3d 1282 (10th Cir. 2008) at N. 24,[6] once this appeal was filed, there was no adjudication on the merits that was preclusive against the parties until the appeal was decided. And that holding by the Tenth Circuit is preclusive on BNSF as it was a party in that case and Dickson was Willis' attorney.

BNSF then once again repeats its claim that, "BNSF could not have tortiously interfered in 2010 with a contingency fee under which it was determined in 2006 and 2008, Dickson was not due any fee." BNSF response brief at page 60. What BNSF is once again ignoring is that the 2006 dismissal was without prejudice as unripe and the 2008 decision only granted a judgment to BNSF on the claims that were justiciable and ripe as of that date. The claims being litigated in Appeal 10-5096 were not justiciable and ripe at the time of the 2008 decision. Because they were being actively litigated when PSO/BNSF secretly settled Appeal 10-5096, PSO/BNSF became liable for both tortious interference with a contract and under 5 O.S. § 8.

---

[6] "A final judgment is one in which no appeal has been perfected within the time allotted by law or one in which an appeal has been properly perfected and acted upon by the highest court whose review has been sought."

21

## CONCLUSION AND PRAYER

The granting of a summary judgment was reversible error and this Court should reverse the ruling of the trial court and remand for further proceedings. .

Respectfully submitted,

By: _William T. Dickson_

William T. Dickson,
Pro Se Plaintiff
2626 Maple Avenue, Suite 200
Dallas, Texas 75201
(214) 696-1100
(214) 740-0112 facsimile
Wtdickson7@aol.com

## CERTIFICATE OF SERVICE

I certify that on September 16, 2015 that I served a true and correct copy of the foregoing pleading to the attorneys listed below in accordance with the Texas Rules of Civil Procedure.

s/William T. Dickson

William T. Dickson

Jonathan LaMendola
Cobb Martinez Woodward
PLLC I 700 Pacific Avenue
Suite 3100
Dallas, Texas 75201
Fax 214-220-5299
214-220-5204
jlamendola@cobbmartinez.com

Levon Hovnatanian
Martin, Disiere, Jefferson & Wisdom, LLP
808 Travis Street
Suite 1800
Houston, Texas 75248

22

hovnatanian@mdjwlaw.com
713-632-1700
Fax 713-222-0101

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word and contains 5884 words as determined by the computer software word count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(l).

s/William T. Dickson
William T. Dickson

23